

THOMAS J. CATLIOTA
U. S. BANKRUPTCY JUDGE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
at GREENBELT

| | | |
|---|---|---|
| In re: | * | Case No.   12-32701-TJC |
| Steven F. Madeoy | * | Chapter   7 |
| Debtor | * | |
| * * * * * * * * * | * | |
| Todd Norris, *et al.* | * | |
| Plaintiffs | * | |
| vs. | * | Adversary No.   13-00717 |
| Roger Schlossberg, Trustee, *et al.* | * | |
| Defendants | * | |
| * * * * * * * | * | |
| Roger Schlossberg, Trustee | * | |
| Counter-Plaintiff | * | |
| vs. | * | |
| Todd Norris, *et al.* | * | |
| Counter-Defendants | * | |

* * * * * * * * * * * * * *

**<u>MEMORANDUM OF DECISION</u>**

Before the court is a motion filed by plaintiffs and counter-defendants Todd Norris ("Mr. Norris") and Jennifer Norris (together "Defendants") seeking summary judgment on Counts 2

1

and 3 of the counterclaim filed by defendant and counter-plaintiff Roger Schlossberg, the Chapter 7 Trustee ("Plaintiff").  Count 2 is an objection to Defendants' unsecured claim.  Count 3 asserts that the Defendants' claim should be equitably subordinated to the other claims in the case.

The court held a hearing on the motion on July 10, 2015.  For reasons stated herein, the court will grant summary judgment in favor of the Defendants on Count 3.  As to Count 2, the court will deny summary judgment but, pursuant to Fed. R. Civ. P. 56(g), will substantially narrow the scope of material facts in dispute.  Specifically, the Defendants' claim that is the subject of the objection consists of four component parts.  The court concludes that the validity of two of the components, namely the claim for unpaid rent and the claim for the unpaid distribution of funds from 1305 East Capitol St. LLC, is finally resolved.  The court further concludes that the only remaining unresolved issue with respect to the third and fourth components of the claim is whether the debtor Steven Madeoy (the "Debtor") is personally liable to the Defendants for 50% of the losses incurred on the project at 2824 12th Street or some or all of the loans Mr. Norris made to Blitz, Inc.  Finally, the court concludes that the amount, as opposed to the validity, of the Defendants' claim cannot be established on this record.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334, 157(a), and Local Rule 402 of the United States District Court for the District of Maryland.  This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), and (O).

**Material Facts Not in Dispute**

The Debtor filed a petition under Chapter 7 on December 21, 2012.  The Plaintiff serves as the Chapter 7 Trustee.

Mr. Norris and the Debtor invested in real estate together for more than twenty years. Generally, Mr. Norris provided funding for the investments and the Debtor managed them.

On April 29, 2013, the Defendants filed a proof of claim in the amount of $535,817. The claim was based on a promissory note (the "Note") signed by the Debtor dated January 3, 2011, in the original amount of $687,691. To secure the Note, the Debtor pledged his membership interest in various limited liability companies that owned real estate investments.

The Note formalized four component claims held by the Defendants, described below.

The first component was for rent. In 2010, the Debtor and his wife were under financial distress and faced foreclosure of their home. On November 5, 2010, the Defendants purchased the home for approximately $1.5 million in cash in a short sale approved by the holder of the first deed of trust, Chase Home Finance. The Defendants then leased the home to the Madeoys until 2014. For the first twelve months, the lease rate was $15,000 per month, which was based on 1% of the value. Mr. Norris believed this was a fair determinant of market rent based on his understanding of residential real estate rent rates.

The Debtor anticipated selling real estate investments during the ensuing twelve months. Rather than agreeing to pay rent on a monthly basis for the first year of the lease, the Madeoys agreed to pay $180,000 annual rent within twelve months when the investments were liquidated. After twelve months, Mr. Norris changed the arrangement to require the Madeoys to pay rent on a current basis and on different terms. The $180,000 obligation for the first year's rent was included in the $687,691 face amount of the Note.

The second component of the claim is a claim Mr. Norris holds for the Debtor's diversion of funds from a real estate investment. Mr. Norris owned a thirty percent (30%) interest in 1305 East Capitol St. LLC, which owned a condominium unit that was free and clear of liens.

Without notice to Mr. Norris, the Debtor, along with others, borrowed against the unit and encumbered it with an indemnity deed of trust. The loan proceeds benefited the Debtor and others; Mr. Norris derived no benefit, directly or indirectly, from the loans. Mr. Norris believed the unauthorized diversion of funds from the unit created a claim against the Debtor. He approached the Debtor and they agreed that the Debtor would repay Mr. Norris $60,000, which represents 30% of the $200,000. The $60,000 obligation for the diversion of funds was included in the $687,691 face amount of the Note.

The third component of the claim stems from a condominium conversion project at 2824 12th Street N.E. in Washington D.C. Mr. Norris and the Debtor owned the project 50/50, although it is not clear whether they owned the project in fee simple or through a corporate entity. Mr. Norris agreed to front all of the costs, including the half that was the Debtor's responsibility. The project resulted in a loss for which the Debtor and Mr. Norris were each responsible for half. Mr. Norris states in an affidavit that the total loss was approximately $400,000. The $200,000 amount for approximately one-half of the losses at 2824 12th Street was included in the $687,691 face amount of the Note.

The fourth component of the claim is based on loans Mr. Norris made to Blitz, Inc. The Debtor was involved in a series of real estate investments in which he purchased large quantities of foreclosed houses across the United States, through Blitz, Inc. The properties were purchased at foreclosure with the expectation that they would be re-sold quickly to obtain a quick profit. Mr. Norris served as the lender for Blitz to enable it to acquire the foreclosed properties. Mr. Norris states in an affidavit that the Debtor owed him $247,681 on account of the Blitz loans

4

as of the date of the Note. The $247,681 amount for the loans Mr. Norris made to Blitz, Inc. was included in the $687,691 face amount of the Note. [1]

The Defendants' proof of claim asserts an outstanding balance on the Note as of the petition date of $535,817.

## Conclusions of Law

Summary judgment is governed by Federal Rule of Bankruptcy Procedure 7056, which expressly incorporates the standards of Federal Rule of Civil Procedure 56.

> A court may award summary judgment only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir.1999); see also Fed. R. Civ. Proc. 56(c) (providing that award of summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law"). In evaluating a summary judgment motion, a court "must consider whether a reasonable jury could find in favor of the non-moving party, taking all inferences to be drawn from the underlying facts in the light most favorable to the non-movant." *Apex Express Corp.*, 190 F.3d at 633. In so doing, a court is not entitled to either weigh the evidence or make credibility determinations. *See Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge...."). If the moving party is unable to demonstrate the absence of any genuine issue of material fact, summary judgment is not proper and must be denied. Therefore, once a motion for summary judgment is made and supported as provided in the Rule, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. Proc. 56(e). The nonmovant may rely on any evidentiary materials listed in Rule 56(c), except the motions themselves. *Celotex,* 477 U.S. at 325.

---

[1] The four components appear to add to $10 less than the face amount of the Note. No party suggests the difference is material.

*In re French*, 499 F.3d 345, 351–352 (4th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Honor v. Booz–Allen & Hamilton, Inc.*, 383 F.3d 180, 185 (4th Cir. 2004)).

**Equitable Subordination**

When determining whether a claim should be equitably subordinated courts follow the three-pronged test set forth in *Matter of Mobile Steel Co.*, 563 F.2d 692 (5th Cir. 1977). Under *Mobile Steel* a claim should be equitably subordinated if: "(1) there is inequitable conduct on the part of the claimant sought to be subordinated; (2) the injury to the other creditors of the bankrupt or unfair advantage for the claimant resulting from the claimant's conduct; and (3) subordination is consistent with the provisions of the Bankruptcy Code." *Id.* at 700.

Courts generally consider three categories of misconduct to determine inequitable conduct under the first prong of the *Mobile Steel* test: "(1) fraud, illegality, and breach of fiduciary duties; (2) undercapitalization; or (3) claimant's use of the debtor as a mere instrumentality or alter ego." *Matter of Missionary Baptist Foundation of America, Inc.*, 712 F.2d 206, 212 (5th Cir. 1983). The severity of the conduct, however, depends on whether the claimant owed a fiduciary duty to or was an insider of the debtor.

> The burden and sufficiency of proof required are not uniform in all cases. Where the claimant is an insider or a fiduciary, the [plaintiff] bears the burden of presenting material evidence of unfair conduct.... If the claimant is not an insider or fiduciary, however, the [plaintiff] must prove more egregious conduct....

*In re Daugherty Coal Co., Inc.*, 144 B.R. 320, 324 (N.D.W.Va. 1992) (quoting *In re N & D Properties, Inc.*, 799 F.2d 726, 731 (11th Cir. 1986)). "If heightened scrutiny applies, the trustee/debtor must only prove unfairness in the transaction; otherwise, subordination is proper only in cases of fraud, spoliation or overreaching." *Id.*

6

The cases are clear, however, that simply being an insider is not sufficient to warrant subordination. *In re Astroline Communications Co.*, 226 B.R. 324, 329 (Bankr. D. Conn. 1998). "It is not mere existence of an opportunity to do wrong that brings the rule into play; it is the unconscionable use of the opportunity afforded by the domination to advantage itself at the injury of the subsidiary that deprives the wrongdoer of the fruits of his wrong." *Comstock v. Group of Int'l Investors*, 335 U.S. 211, 229, 68 S.Ct. 1454, 1463 (1948).

In light of the foregoing standards, the first question here is whether the Defendants are insiders. A non-statutory insider "may be any person or entity whose relationship with the debtor is sufficiently close so as to subject the relationship to careful scrutiny." *Butler v. David Shaw, Inc.*, 72 F.3d 437, 443 (4th Cir. 1996). Insider status is determined by "a factual inquiry into the closeness of the relationship between the parties and whether the transaction between the transferee and debtor was conducted at 'arm's length.'" *In re Three Flint Hill Ltd. Partnership*, 213 B.R. 292, 297-98 (D. Md. 1997) (finding that while control is certainly probative of an insider relationship, it is not required for finding insider status).

Here, a number of facts point to the close relationship between the parties. Mr. Norris and the Debtor have been co-venturers in many real estate transactions and investments since 1990. The Defendants purchased the Madeoys' home for $1.5 million and leased it back to them rather than have them lose it in a foreclosure sale, and, as described further below, Mr. Norris allowed the Madeoys to use his credit card for several years.

The matter is not free from doubt, however. Several facts suggest that, at least at the time the Debtor signed the Note, the relationship between the parties was strained. For purposes of the motion for summary judgment, the court will assume that the Defendants are insiders. If the

7

Defendants are entitled to summary judgment on the equitable subordination claim assuming they are insiders, they certainly would be entitled to summary judgment if they are not insiders.

The Plaintiff bases his equitable subordination claim essentially on three factual underpinnings. The first is that, by issuing the Note to the Defendants two years before he filed for bankruptcy, the Debtor preferred the Defendants over his other creditors. To be sure, the Debtor's pledge of collateral to an assumed insider to secure previously unsecured claims might well be the type of unfair advantage that equitable subordination is intended to remedy. At the least, it would be unlikely that it could be resolved in Defendants' favor on summary judgment. Here, however the lien has been avoided; the Note is now unsecured. Thus, the question turns to whether the Defendants' unsecured claim should be equitably subordinated.

The record establishes that the four components of the Note were pre-existing claims and the Note aggregated those claims primarily to secure them. If the Note had not been issued, the Defendants nevertheless would have been entitled to file a proof of claim asserting the claims in their component parts. Indeed, the parties address the four component parts at some length, and the court will do the same. The court addresses each component in the discussion of the objection to the claims below. It is sufficient to say here that the record is simply bereft of any basis for finding that the Defendants obtained an unfair advantage or engaged in any wrongdoing through the creation of the four component claims.

The second factual basis for the Plaintiff's claim of equitable subordination is the Defendants purchase of the Madeoys' home in the short sale transaction and the subsequent lease of the home back to the Madeoys. On the record before the court, the short sale was approved by Chase Home Finance based on an appraisal it obtained, and the value of the residence was substantially below the amount of the Chase loan.

The record provides no basis upon which a factfinder could conclude that Chase acted any way other than at arm's length or in order to protect its own self-interest.  Moreover, there is no evidence before the court that the sale was for less that reasonably equivalent value or that there was anything improper, fraudulent, or even unfair about the transaction.  No evidence has been submitted that the rent rate was unfair or improper.  There is nothing to establish that the Defendants gained any advantage in the transaction, much less an unfair one.

The third factual basis for the claim of equitable subordination is what the Plaintiff refers to as the secret credit card.  When the Madeoys fortunes turned, Mr. Norris allowed the Madeoys to use a Visa card issued to him.  The card had a $5,000 limit.  The Madeoys charged goods and services to the card, and paid it each month either by paying Mr. Norris or the credit card company directly.

Despite the Plaintiff's colorful rhetoric, on this record there is nothing fraudulent or unfair about the transaction.  No portion of the Defendants' claim or Note obligation stems from the Madeoys use of the credit card.  While the arrangement may be unusual, the record simply establishes that Mr. Norris allowed the Madeoys to use his credit card and the Madeoys paid for the charges.  Other than as relevant to show the nature of the relationship between the parties, the credit card arrangement has no particular significance to the equitable subordination dispute.  Again, there is nothing to establish that the Defendants gained any advantage from the arrangement, much less an unfair one.[2]

For the foregoing reasons, the court concludes that Defendants are entitled to summary judgment on Count 3 of Plaintiff's counterclaim.

---

[2] The Plaintiff argues that the Debtor failed to disclose his use of the credit card on his bankruptcy schedules.  There is nothing in the record to suggest the Defendants had anything to do with the Debtor's preparation of his schedules or had any influence on the process.

9

**Claim Objection**

For non-insider creditors, the Bankruptcy Code provides a burden shifting process for resolving claim objections. *In re Harford Sands Inc.*, 372 F.3d 637, 640 (4th Cir. 2004). When a creditor files a proof of claim, that claim constitutes prima facie evidence of the amount and validity of the claim. Fed. R. Bankr. P. 3001(f). The burden then shifts to the objecting party to introduce evidence to rebut the claim's presumptive validity. *In re Gates*, 214 B.R. 467 (Bankr. D. Md. 1997). If met, the claimant must ultimately prove the amount and validity of a claim by a preponderance of the evidence.

This burden shifting process likewise applies to the claims of insiders. An insider's claim is entitled to the presumption of validity of Rule 3001(f). *In re Harford Sands Inc.*, 372 F.3d at 641 (presuming the validity of an insider's proof of claim when it was filed); *see also In re Inter-Island Vessel Co., Inc.*, 98 B.R. 606, 608 (Bankr. D. Mass. 1988) (applying the presumption of validity to an insider's proof of claim). However, because of the influence and control an insider may wield, an insider's transactions with a debtor are subject to rigorous or strict scrutiny. *In re Harford Sands Inc.*, 372 F.3d at 641. The objecting party bears the burden of presenting material evidence of unfair conduct. *See Id*. In that event, the "burden is on an insider claimant to show the inherent fairness and good faith of the challenged transaction." *Id.* As the Court stated in *Pepper v. Litton*, 308 U.S. 295, 306, 60 S.Ct. 238, 245, 84 L.Ed. 281 (1939), this burden does not apply until the objecting party overcomes the prima facie effect of the claim. Thus, claims alleged by an insider are allowable "when honest and bona fide, but the bona fide must be demonstrated beyond cavil and examined with a large measure of watchful care." *In re Tri-O-Clean, Inc.,* 230 B.R. 192, 198-99 (Bankr. S.D. Fla. 1998).

The court will apply these standards to the four component parts of the claim.  In doing so, the court will again assume the Defendants are insiders of the Debtor.

With respect to the first component of the claim, there is no evidence before the court that contradicts Mr. Norris's sworn statement that the Madeoys leased the residence from the Defendants after the Defendants purchased the house, and that fact is beyond dispute.  Mr. Norris stated his reason in an affidavit for his belief that the rent was fair value for the $1.5 million home, and nothing before the court contradicts that statement or establishes the rate was unfair.  The court concludes that the validity of the component of the Note that constitutes the claim for rent is established in the case.

With respect to the second component of the claim, there is no evidence before the court that rebuts Mr. Norris's sworn statement that: (1) he held a 30% interest in 1305 East Capitol St. LLC and that the unit was unencumbered; (2) the Debtor surreptitiously encumbered the unit with a $200,000 loan; (3) the Debtor used the $200,000 loan proceeds for his personal benefit and the benefit of others; (4) Mr. Norris obtained no benefit from the loan; and (5) the Debtor agreed to repay the Defendants $60,000 for the funds he diverted from the unit.

Indeed, even in the absence of the Debtor's agreement to repay the Defendants for the diverted funds, the court would conclude, on the record before it that Mr. Norris holds a $60,000 claim against the Debtor for the diverted funds.  The court concludes that the validity of the component of the Note that constitutes the claim for diversion of funds from 1301 East Capitol St. LLC is established in the case.

With respect to the third component of the claim, there is no evidence before the court that rebuts Mr. Norris's sworn statement that he and the Debtor agreed that he would fund the costs of the condominium project at 2824 12th Street, and that the project suffered a loss.  Thus,

11

it is undisputable on this record that Mr. Norris funded the costs of the project and suffered a loss.  However, nothing in the record establishes the source of the Debtor's obligation to pay Mr. Norris for half of the losses, whether by written agreement or otherwise, other than to the extent it is included in the Note.  Therefore, the court concludes that the validity of the component of the Note that constitutes the claim for 50% of the losses incurred on the project is dependent on whether the Debtor is personally liable to Mr. Norris for those losses. That issue remains unresolved.

With respect to the fourth component of the claim, there is no evidence before the court that rebuts Mr. Norris's sworn statement that he made loans to Blitz, Inc. and those loans have not been repaid in full.  Therefore, these facts are established in this proceeding.  However, nothing in the record establishes the source of the Debtor's obligation to pay Mr. Norris for a share of the loans, whether by written agreement or otherwise.  Therefore, the court concludes that validity of the component of the Note that constitutes the loans to Blitz, Inc. is dependent on the resolution of the issue of whether the Debtor is personally liable to Mr. Norris for those loans.  That issue remains unresolved.

The foregoing addresses the *validity* of the components.  The court must also deny summary judgment as to the *amount* of the Defendants' total claim for several reasons.  First, Mr. Norris's affidavit states that the losses from 2824 12th Street are "approximately $400,000." This statement is too general for claim purposes.  Second, the amount due from the Blitz loans as of the date of the Note is sufficiently unclear as to defeat summary resolution. The Defendants' state that Bobi Gibson, a bookkeeper for the various real estate investments, maintained a tally of the amounts due to Mr. Norris for the Blitz loans.  The tally has been submitted in the record.  However, it is not clear whether Bobi Gibson was acting on Mr. Norris's behalf or Blitz's behalf

in maintaining the accounting of the amount due. Finally, if the court determines that the Debtor is not liable for the third or fourth components of the claim as discussed above, the calculation of the amount of the total claim may need to be remade.

## Conclusion

For the foregoing reasons, the court will grant summary judgment to the Defendants on Count 3 of the counterclaim. The court will deny summary judgment on Count 2, but limits the issues in dispute to those described above.

cc:    All parties

**END OF MEMORANDUM OF DECISION**